781 So.2d 748 (2001)
STATE of Louisiana, Appellee,
v.
Deforrest Ray BUGBEE, III, Appellant.
No. 34,524-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2001.
*751 Louisiana Appellate Project, by J. Wilson Rambo, Monroe, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Laura Owen Wingate, Tommy J. Johnson, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, STEWART & PEATROSS, JJ.
PEATROSS, Judge.
Defendant, Deforrest Ray Bugbee, III, was convicted of two counts of indecent behavior with a juvenile, adjudicated a second-felony, habitual offender, and sentenced to 14 years hard labor on each count to be served concurrently. He has appealed the convictions and sentences. For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL HISTORY
A.A. and E.R. are neighborhood friends who live near Old Mansfield Road in Caddo Parish. They and other neighborhood children frequently played together in a wooded area near their homes. On or about June 18, 1998, A.A. and E.R. saw Defendant for the first time in the front yard of B.F.'s home. B.F., who was 17 at the time, lived next door to A.A. Over the course of the following week, A.A. and E.R. encountered Defendant while playing in the wooded area. In June 1998, A.A. was 11 years old and E.R. was 12 years.
Corporal Pamela J. Lee of the Shreveport Police Department testified that she responded to a complaint by the mother of A.A. that Defendant had been touching A.A. and her friend, E.R. Corporal Lee interviewed A.A. and E.R. separately and each told her the same story. Defendant would tell the girls that their bathing suit tops needed to be adjusted. He would then offer to correct the situation and would untie their bathing suit tops and touch their breasts. He also touched their buttocks, either simply slapping or punching them in the buttocks if he was behind them; or he would ask for a hug and then *752 touch their buttocks. Defendant would downplay the instances where he would punch or slap A.A. and E.R. on the buttocks, stating his actions were part of an initiation into a "booty club."
A.A. and E.R. told Corporal Lee that B.F. was present on all but one occasion and that, on that one occasion, only E.R. and Defendant were present. A.A. and E.R. stated that B.F. had not touched them. Corporal Lee notified Detective Kyle Tanner of the Shreveport Police Department and he assumed responsibility for the investigation. Detective Tanner then took recorded statements separately from A.A. and E.R., receiving essentially the same information.
In their statements, the girls related that Defendant would talk about parties he had attended and his alleged sexual exploits. He had informed them that he was 32 years old; and, in graphic detail, he described the physical discomfort his alleged 13-year-old girlfriend suffered after having sex with him.
A.A. and E.R. also stated that Defendant came to each of their homes. A.A. said that, on two occasions, Defendant came to her home and tapped on her window. The first time was approximately 7:30 p.m. or 8:00 p.m. and the second time was approximately 1:00 a.m. or 1:30 a.m. the following morning. On each occasion Defendant asked A.A. to sneak out with him and each time she told him no. On two or three occasions Defendant came to E.R.'s home in the early morning hours and attempted to persuade her to come outside. One time in particular, A.A. was spending the night with E.R. and Defendant came to E.R.'s home at approximately 3:00 a.m. and asked them to sneak out with him. Both girls declined.
In her testimony, A.A. repeated the same things she told both Corporal Lee and Detective Tanner. A.A. estimated that Defendant touched her between 10 and 13 times. She testified that she continued to go back to the wooded area because she did not really expect Defendant to be there. She and her friends had been playing in the wooded area for years and no adults had ever been there.
A.A. stated that she did not initially tell her mother because she just hoped the problem would go away. She explained that she and her mother did not communicate very well, and she did not really feel comfortable talking about it. She knew that Defendant's actions were wrong, but she felt he did things in ways that were not recognizable, making her question her own judgment. Further, A.A. and E.R. were afraid of Defendant. He told them that he knew E.R.'s mother, that she had a tattoo, which he accurately described, and that he knew the type of car she drove.
E.R. also testified consistently with what she told Corporal Lee and Detective Tanner. She estimated that Defendant touched her eight or ten times. E.R. also said that she did not expect to see Defendant in the woods. She initially assumed he was staying with B.F.; but, because she saw Defendant in the wooded area every time she went there, she came to believe he was staying in the woods.
K.P., a 15-year-old friend of A.A. and E.R., testified that he lived in Stonewall and, during the summer of 1998, spent time in A.A.'s and E.R.'s neighborhood. He met Defendant that summer and, on several occasions, saw Defendant touch A.A.'s breasts. According to K.P., Defendant would offer to fix A.A.'s bikini top; and, in the process, he would put his hands inside her bathing suit. He also saw Defendant hit A.A. on her buttocks. He did not see Defendant touch E.R. K.P. further testified that A.A. was 11 years old at *753 that time and that Defendant told K.P. he was 32 years old.
B.F. testified that he met Defendant at a nearby gas station and they became acquainted. He told Detective Tanner, however, that Defendant was his ex-girlfriend's father or stepfather. B.F. would "hang out" in the woods with Defendant and talk. He considered Defendant to be "sort of" a friend. At trial, B.F. initially testified that he had only seen Defendant touch A.A. by placing his arm around her. After being pressed, however, by the assistant district attorney, B.F. related that he told Detective Tanner that he had seen Defendant place his hand on A.A.'s cheek[1]. After a recess, B.F. further admitted that he had seen Defendant touch E.R.'s breasts. According to B.F., Defendant asked E.R. to sit on his lap, which she did. While E.R. was on Defendant's lap, B.F. stated that he saw Defendant rubbing E.R.'s breasts. A.A. was not present.[2] B.F. acknowledged being interviewed by Detective Tanner and that the interview was tape recorded. B.F. denied telling Detective Tanner that he had not seen Defendant touch either A.A. or E.R. He contended that he told Detective Tanner at the beginning of, and at the end of, his interview that he saw Defendant touch E.R.
Detective Tanner described taking witness statements from A.A. and E.R. They each informed him that Defendant had told them his name was Deforrest, but he went by the name of "Bugsy." According to Detective Tanner, A.A. told him Defendant had touched her breasts and buttocks. She also mentioned he had unzipped her pants.[3] E.R. told him Defendant had touched her on parts of her body. Based on those interviews, he identified Defendant as a suspect. During the course of his investigation, Detective Tanner determined that Defendant was 32 years old, that A.A. was 11 years old and that E.R. was 12 years old at the time these incidences occurred.
Detective Tanner stated that, when he interviewed B.F., he advised him of his rights as a precaution because B.F.'s age and presence made him a possible suspect.[4] He also stated that A.A. had told him that B.F. had touched her or tried to touch her. Detective Tanner further related that B.F. initially denied seeing Defendant touch either A.A. or E.R., but then told him he had seen Defendant touch the girls.
Following the submission of the case, the jury convicted Defendant of both counts of indecent behavior with a juvenile. He was then tried as a second-felony, habitual offender. In a March 20, 2000 unpublished opinion, however, this court determined that the record of the habitual offender adjudication had been irretrievably lost resulting in prejudice to Defendant's constitutional right of review of the complete record of trial. La. Const. art. I, § 19.[5] Accordingly, this court vacated the sentence, dismissed the appeal as premature and remanded the matter to the trial court for retrial of the habitual offender bill and for resentencing. Defendant's right to appeal the conviction and sentence were preserved.
*754 On June 26, 2000, Defendant was again adjudicated a second-felony, habitual offender and he was sentenced to 14 years hard labor on each count, to be served concurrently. In the meantime, the record of the original habitual offender adjudication was apparently located and is also included in the record.

DISCUSSION
Assignment of Error Number One: The evidence is legally insufficient to sustain Defendant's convictions.
Assignment of Error Number Six: The Honorable Trial Court erred in overruling or denying Defendant's motion for post trial verdict judgment of acquittal.
Since these assignments both concern sufficiency of the evidence, they are consolidated for discussion.[6] Defendant argues that, in applying the appellate review standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), there is insufficient evidence to sustain either conviction. Defendant complains that there is a lack of physical evidence and asserts that the evidence rests solely on the inconsistent and contradictory testimony of the victims, A.A. and E.R. Defendant argues that the respective victims' testimony contains too many "material inconsistencies." He points out that, at trial, A.A. denied that she had accused B.F. of attempting to touch her, contrary to Detective Tanner's report. Defendant also notes that, at trial, B.F. initially denied ever seeing Defendant touch A.A. inappropriately, but then recanted. Defendant seeks remand for a new trial or a judgment of acquittal. On this record, we find he is not entitled to either request.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, supra, in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. Under Jackson v. Virginia, supra, the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, supra; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992). The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. *755 Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
La. R.S. 14:81 provides, in pertinent part:
A. Indecent behavior with juveniles is the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense.
To convict a defendant of this offense, the state must prove that (1) there was an age difference of greater than two years between the accused and the victim, who was not yet 17; (2) the accused committed a lewd or lascivious act upon the person or in the presence of a child; and (3) that the accused had the specific intent to arouse or gratify either his own or the victim's sexual desires.[7]State v. Sturdivant, 27,680 (La.App.2d Cir.2/28/96), 669 So.2d 654; State v. Stec, 99-633 (La.App. 5 Cir.11/30/99), 749 So.2d 784.
The word "lewd" means lustful or indecent and signifies that form of immorality which relates to sexual impurity carried on in a wanton manner. Further, the word "lewd" is identified with obscenity and community norms for morality. The word "lascivious" means tending to incite lust, indecent, obscene and tending to deprave the morals in respect to sexual relations. Finding that an act is lewd or lascivious depends upon the time, the place and all of the circumstances surrounding its commission, including the actual or implied intention of the actor. State v. Sturdivant, supra.
The evidence showed that, at the time of the incident, A.A. was 11 years old and E.R. was 12 years old and that Defendant, at age 32, was more than two years older than both A.A. and E.R., as is required by the provisions of La. R.S. 14:81. A.A. and E.R. testified that Defendant touched their breasts and buttocks numerous times. Their testimony was uncontroverted and A.A.'s testimony was corroborated by K.P. Although there is a conflict as to whether A.A. did or did not also identify B.F. as an offender, this conflict is minor and in no way diminishes what A.A. described. This is not a case of a victim who initially accuses one man of a crime and then changes her mind and accuses a second man. The police report recounts A.A.'s descriptions of how Defendant touched her. A.A. never altered her position in identifying Defendant as the man who repeatedly touched her breasts and buttocks. Of significance was the absence of any motive or suggested motive for A.A., E.R., K.P. and B.F. to make false accusations against Defendant. Not surprisingly, Defendant did not specifically identify the alleged "material inconsistencies" in the testimony of the victims. Our review of the testimony discloses no such "material inconsistencies." A.A. and E.R. were each clear and certain in describing their encounters with Defendant in the wooded area near their homes. Also not surprisingly, Defendant does not mention K.P.'s corroborative testimony.
Defendant's intent may be inferred by his sexually-laced dialogue coupled with his pattern of behavior of touching the *756 girls breasts and buttocks. One touch may be an accident, but 8 to 13 times indicate a plan. The evidence did not suggest any non-sexual reason(s) for the repeated touching of the girls' breasts and buttocks.
Under the facts of this case, a rational trier of fact could have found beyond a reasonable doubt that the evidence, when viewed in the light most favorable to the prosecution, established that Defendant committed indecent acts with the juveniles, A.A. and E.R. Succinctly, a rational trier of fact could have concluded beyond a reasonable doubt that, on numerous occasions, Defendant touched A.A.'s and E.R.'s breasts and buttocks; that his acts of touching, under the circumstances, constituted lewd and lascivious acts; and that he committed those acts for the purpose of arousing or gratifying either his own or A.A.'s and E.R.'s sexual desires. These assignments are, therefore, without merit.
Assignment of Error Number Five: The evidence is legally insufficient to sustain Defendant's adjudication as an habitual offender.
Assignment of Error Number Seven: The Honorable Trial Court erred in overruling or denying Defendant's motion to quash.
La. R.S. 15:529.1(D)(1) provides, in pertinent part:
(b) Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence. (Emphasis Added.)
In order to employ the habitual offender statute with a guilty plea predicate offense, the burden is on the state to prove two things. First, the state must prove the existence of the prior guilty plea. Second, the state must prove the defendant was represented by counsel when the plea was taken. If the state meets that burden, then the defendant must offer some affirmative evidence that his rights were infringed or there was a procedural irregularity. If the defendant is able to do this, then the burden of proving the constitutionality of the guilty plea shifts back to the state. The state can meet its burden by introducing a perfect transcript of the taking of the guilty plea. State v. Shelton, 621 So.2d 769 (La.1993); State v. Jackson, 31,433 (La.App.2d Cir.1/20/99), 726 So.2d 1061, writ denied, 99-2250 (La.12/17/99), 751 So.2d 876.
In the case sub judice, the habitual offender bill of information listed the predicate felony offense as carnal knowledge of a juvenile, to which the State alleged Defendant pled guilty on June 16, 1997. During the first habitual offender adjudication, the State's evidence consisted *757 of certified copies of a bill of information for the predicate offense, Docket Number 184,926, dated February 3, 1997, and the corresponding court minute entry. The bill of information charged Defendant with three counts of contributing to the delinquency of a juvenile, two counts of carnal knowledge of a juvenile and two counts of molestation of a juvenile. The original court minute entry reflected that Defendant appeared with counsel, withdrew a not guilty plea and entered a plea of guilty to count three: carnal knowledge of a juvenile. The minute entry also recorded that Defendant was advised of his constitutional rights per Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and that the remaining counts were dismissed, as agreed.
Confusion arose when the State called Bill Swaggert, a probation and parole officer, to testify that he had supervised Defendant during his parole for the predicate offense. To the surprise of the assistant district attorney, Mr. Swaggert testified that Defendant was on parole for the offense of contributing to the delinquency of a juvenile under Docket Number 186,926. Given the conflict between the court minutes and the parole officer's testimony, the hearing was recessed. When the hearing reconvened, Leonard Tapo, deputy clerk of court, was called by the State and testified that, in 1998, he was alerted to a possible error in the court minutes for Docket Number 186,926. A review of the trial transcript confirmed an error had been made in that the carnal knowledge of a juvenile charge, to which Defendant pled guilty, was count five and not count three. Count three was a contributing to the delinquency of a juvenile charge. Mr. Tapo then corrected the court minute entry reflecting the guilty plea to be to count five. The State then called Catherine Moore Spears, a probation and parole officer, who confirmed Defendant's parole status. She also explained that the information in their records comes from the Department of Corrections which relies on the court minutes. If the court minutes are incorrect, their information, therefore, would be incorrect. They had no reason to believe the information was incorrect. The State then introduced a certified copy of the transcript of the guilty plea colloquy for Docket Number 184,926, which verified that Defendant pled guilty to count five.
At the second habitual offender hearing, the State reintroduced certified copies of a bill of information for the predicate offense, Docket Number 184,926, dated February 3, 1997, the corresponding court minute and a transcript of the guilty plea colloquy for Docket Number 184,926. Defendant did not allege an infringement of his rights or irregularity with respect to the predicate offense guilty plea to carnal knowledge of a juvenile; he simply contended at trial, and now on appeal, that there was insufficient evidence and complains about the modified court minute entry. The State established that the predicate offense was a counseled guilty plea. Since Defendant did not offer evidence of an infringement of his rights or other irregularity concerning the guilty plea, no further evidence was required by the State. Nevertheless, the State did provide a "perfect transcript" of the guilty plea colloquy which clearly shows that Defendant voluntarily waived his constitutional rights. The introduction of the "perfect transcript" in effect means the State met its burden with or without the modified court minute. State v. Shelton, supra; State v. Jackson, supra.
These assignments are, therefore, without merit.
*758 Assignment of Error Number Two: The Honorable Trial Court erred in imposing upon Defendant an excessive sentence.
Assignment of Error Number Three: The Honorable Trial Court erred in failing to adequately consider and give appropriate weight to factors required to be considered by La.C.Cr.P. art 894.1 in fashioning Defendant's punishment and, further, failed to adequately state for the record the considerations taken into account and the factual basis therefor in imposing sentence herein.
Assignment of Error Number Four: The Honorable Trial Court erred in overruling or denying Defendant's motion to reconsider sentence.
Assignment of Error Number Eight: The Honorable Trial Court erred in imposing upon Appellant the maximum punishment authorized for the offense without particular justification required for the imposition of such a maximum sentence.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894-1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary, even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may properly review all prior criminal activity. State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered, even in the absence of proof the defendant committed the other offenses. State v. Anderson, 30,060 (La.App.2d Cir.10/29/97), 702 So.2d 40; State v. Jones, 31,569 (La.App.2d Cir.12/9/98), 724 So.2d 810. Absent a defendant's assertion that he was falsely or mistakenly charged with an offense, the sentencing court may consider a dismissed charge as part of the defendant's criminal history, even when the dismissal forms part of the plea agreement. State v. Cook, 466 So.2d 40 (La. App. 2d Cir.1985); State v. Daley, 459 So.2d 66 (La.App. 2d Cir.1984), writ denied, 462 So.2d 1264 (La.1985).
Whether the sentence imposed is too severe depends on the circumstances *759 of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra. As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La. App.2d Cir.8/20/97), 700 So.2d 541 [15 years for molestation]; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
Defendant complains that the trial judge did not articulate each and every reason for the imposition of his sentence. He further points out that the maximum sentence is properly reserved for the worst offender and the record does not cast him in such a light. He notes that there was no allegation of sexual intercourse or of a serious attempt at sexual intercourse. He contends the trial judge focused too much on the crimes and did not focus on mitigating factors: his low educational level and history of employment.
The key is whether the record sets forth reasons that support the sentence. In this case, the 32-year-old Defendant's criminal record included not only a conviction for carnal knowledge of a juvenile, but an additional count of carnal knowledge of a juvenile, three counts of contributing to the delinquency of a juvenile and two counts of molestation of a juvenile, all of which were dismissed as part of his plea of guilty to one count of carnal knowledge of a juvenile. Those dismissed counts concerned three teenage girls, the oldest of whom was 15 years old. We note that the trial judge was the same trial judge who sentenced Defendant on his plea to carnal knowledge of a juvenile. Defendant's criminal record also includes 1985 convictions for criminal mischief, simple criminal damage to property and criminal trespass and a 1991 conviction for unauthorized use of a movable. The trial judge was, no doubt, quite familiar with Defendant's background and was personally aware that the previous period of imprisonment had been ineffective.
Although Defendant argues this case did not concern sexual intercourse or attempted sexual intercourse, one cannot ignore Defendant's apparent intentions given his previous conviction of carnal knowledge of a juvenile and numerous charges related to juveniles. His steady stream of sexual dialogue, which included rather vivid descriptions of sex with teenage girls and his contemporaneous acts of touching A.A.'s and E.R.'s breasts and buttocks, were clearly intended to arouse his and/or the victims' sexual desires. His repeated efforts to have A.A. and E.R. meet him at night were strong signals of carnal intention. Under these circumstances, we do not find the maximum sentences are grossly disproportionate. When the crime and punishment are viewed in light of the harm done to society, they do not shock the sense of justice. These assignments are, therefore, without merit.

CONCLUSION
For the foregoing reasons, the convictions of Defendant, Deforrest Ray Bugbee, III, and the respective sentences imposed are affirmed.
AFFIRMED.
NOTES
[1] It is unclear if by use of the word "cheek" B.F. was referring to the facial area or if he was referring to the slang term for buttocks.
[2] In her testimony, E.R. never mentions this incident.
[3] In her testimony, A.A. never mentioned the defendant having unzipped her pants.
[4] B.F.'s age is listed in the police report as 17.
[5] No. 33,389-KA.
[6] In his brief, Defendant also consolidated his argument for these assignments of error and does not mention La.C.Cr.P. art 821, Motion for Post Verdict Judgment of Acquittal. We will, therefore, assume Defendant has abandoned that particular assignment of error.
[7] The jury was instructed that, among the elements that must be proven, is that Defendant was at least 17 years of age at the time of the alleged offense. La. R.S. 14:81 was amended effective August 15, 1997, to remove the requirement that the defendant be over the age of 17. Acts of the Legislature: 1997 La. Acts 743.