# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-937

STATE OF LOUISIANA

VERSUS

TODD ANDREW JONES

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 288,416
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and Elizabeth A. Pickett, Judges.

CONVICTION REVERSED; JUDGMENT OF ACQUITTAL ENTERED; SENTENCE VACATED.

James C. Downs
District Attorney - Ninth Judicial District Court
701 Murray Street
Alexandria, LA 71301
Telephone:  (318) 473-6650
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

Michael W. Shannon
Assistant District Attorney - Ninth Judicial District Court
P. O. Box 1792
Alexandria, LA 71309
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**Telephone: (337) 491-0570**
**COUNSEL FOR:**
     **Defendant /Appellant - Todd Andrew Jones**

**THIBODEAUX, Chief Judge.**

Defendant, Todd Andrew Jones, appeals his jury conviction of attempted indecent behavior with a juvenile, violations of La.R.S. 14:81(A) and 14:27, on the basis of insufficiency of the evidence. Because we agree that the evidence is insufficient to sustain a verdict of guilty, we reverse Defendant's conviction, order the entry of a judgment of acquittal, and vacate his sentence of one year at hard labor.

## LAW AND DISCUSSION

Defendant argues that the State failed to prove specific intent on the part of Defendant to sexually arouse himself or the victim and that the sexual comment made was not "lewd and lascivious" such that would warrant a conviction for attempted indecent behavior with a juvenile.

When reviewing sufficiency of the evidence, an appellate court must determine, in a light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).

Defendant was charged with a violation of La.R.S. 14:81(A)(1), which provides:

> Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desire of either person:
>
> > (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense.

The State has to prove that: (1) there was an age difference of at least two years and the victim was under the age of seventeen; (2) the accused committed a lewd or lascivious act upon the person or in the presence of the child; and, (3) the

accused had the specific intent to arouse or gratify either his own or the victim's sexual desires. *State v. Robinson,* 43,063 (La.App. 2 Cir. 2/13/08), 975 So.2d 853.

Defendant was convicted of the lesser and included offense of attempted indecent behavior with a juvenile. Louisiana's attempt statute provides:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27.

Accordingly, in order to have convicted Defendant of the lesser and included offense of attempted indecent behavior with a juvenile, the jury would have had to find that the Defendant specifically intended to commit a lewd and lascivious act upon the victim, or in the victim's presence, and did an act in furtherance thereof. *State v. Gaspard*, 02-1040 (La.App. 3 Cir. 3/5/03), 841 So.2d 1021.

At trial, the victim, J.D.[1], testified that on the evening of February 20, 2007, he visited his girlfriend in her home. At the time, he was fifteen years old. The girlfriend's mother and her uncle, Jerry Whatley, were present. Defendant was there visiting with Whatley. The victim stated that the two men were sitting in Whatley's bedroom talking when he walked into the room and asked Defendant to give him a ride to the store. Defendant said, "You couldn't get somethin' for nothin.'" When he asked Defendant what he meant, J.D. testified that Defendant "told me to put my dick in his mouth." J.D. said that he immediately left the room and told his girlfriend's mother. She told him to call his mother, who called the police.

On cross-examination, J.D. stated he had seen Defendant at the house on previous occasions. He stated that when he walked into the bedroom, the two men

---

[1] The victim's initials are used to protect his identity as required by La.R.S. 46:1844(W).

2

were fully clothed and sitting on the bed. He recalled that the first time he walked into the room, Whatley had made a comment about wanting to see some pubic hair. J.D. stated that Defendant's statement did not get him sexually aroused and he did not know if Defendant was sexually aroused.

Defendant also testified regarding the incident. At the time of the offense, Defendant worked for the Lecompte Police Department as Assistant Chief of Police. Defendant testified that he was bisexual, but that he had never touched a child. Defendant stated he had known the victim for about two years prior to the incident, primarily through the victim's older brother. He said that he went to the home of the victim's girlfriend to deliver a cell phone to the victim's brother, but he was not there, so he stayed to visit with Whatley. Defendant stated the victim came into the room and asked "what you two [']hoes ta[l]king about?" He said that they were all laughing and joking. At some point, Whatley asked him to show some pubic hair, and they continued to laugh and joke. Defendant testified that the bedroom door was open at the time of the remark. He said that the victim walked in and out of the room a few times and then asked "what would we do if he, if he showed us." Then, after Defendant made the comment, the victim left again. Defendant stated he had no intention of arousing the victim, or himself, that they were just making "trash talk." Defendant stated that he was thirty-four at the time of trial.

There must be specific intent to commit a lewd and lascivious act upon the person of, or in the presence of the victim, and an act in furtherance thereof. In *Gaspard*, the defendant was charged with indecent behavior with a juvenile for showing pornographic movies to his eleven-year-old son and giving him magazines that showed nude women. He told his son that the material "would make his penis hard." *Gaspard*, 841 So.2d at 1021. The jury convicted the defendant of the lesser

3

and included offense of attempted indecent behavior with a juvenile. This court reversed the conviction stating that there was nothing to indicate that the defendant actually desired sexual activity with the victim. There was no nudity, or touching of either the defendant or the son. There was no act in furtherance thereof.

In *State v. Peloquin*, 04-667 (La.App. 3 Cir. 11/17/04), 888 So.2d 393, *writ denied*, 04-3170 (La. 4/8/05), 898 So.2d 1280, this court discussed the elements necessary to find attempted indecent behavior with juveniles. In *Peloquin,* the defendant was charged with attempted sexual battery. However, the issue was whether the trial court erred when it allowed testimony alleging attempted indecent behavior with a juvenile pursuant to La.Code Evid. arts. 403 and 412.3. Two girls testified that the defendant had approached them and asked if they wanted to see his penis. Both girls answered "no" and walked away. This court stated:

> In *Gaspard,* we reviewed *State v. Louviere,* 602 So.2d 1042 (La.App. 4 Cir. 1992), *writ denied*, 610 So.2d 796 (La.1993), where the appellate court reversed the defendant's conviction for attempted indecent behavior with a juvenile. In *Louviere*, our colleagues noted that it would be difficult for a rational trier of fact to conclude that testimony concerning a "bad kiss" proved the occurrence of a lewd and lascivious act. Additionally, there was no indication that any other act was planned. The fourth circuit concluded that without genital contact or any other obscene or indecent act or repeated occurrence, the kiss fell short of the statutory requirements of the crime and reversed the defendant's conviction. After reviewing *Louviere*, we found, in *Gaspard*, that the act at issue was not one contemplated by La.R.S. 14:81. We concluded that assuming there was an act, there was no evidence the defendant did anything upon the person of his son and he did not participate in any lewd acts in the presence of his son. Accordingly, we reversed the defendant's conviction.
>
> The acts of Defendant involving B.P. did not constitute an attempted indecent behavior with a juvenile. B.P. did not testify how old she was when Defendant posed this question to her and the State asserted, in argument to the court, that B.P. was seventeen years old. Accordingly, La.R.S. 14:81 would not be applicable to her. The statute

4

would, however, be applicable to K.P. inasmuch as the State alleged she was fourteen at the time of the incident. Defendant asked K.P. if she wanted to see his penis, she replied no, and walked away. There was no testimony that Defendant did an act in furtherance of revealing his penis to K.P. The question was preparatory and not an overt act similar to that in [*State v.*] *Baxley*, [93-2159 (La. 2/28/94), 633 So.2d 142]. Therefore, the evidence did not prove Defendant's acts constituted an attempted indecent behavior with a juvenile.

*Id.* at 396.

In *State v. Smith,* 94-3116 (La. 10/16/95), 661 So.2d 442, wherein the defendant was found to be guilty of an attempted sexual offense, the defendant had walked into his minor sons' bedroom after they had gone to bed. One son, the victim, got out of his bed and got into his brother's bed because he did not want to be near his father. The defendant lay down on the victim's bed and told him to come over to the bed. When he did so, the defendant told him to sit on his chest so he could suck his son's penis. The boy began crying and the defendant left the room. Even though the boys told their mother about the incident, it was not until a few years later, following a similar incident, that Defendant was arrested and charged with attempted aggravated crimes against nature. In *Smith,* the supreme court discussed what constituted attempt and explained:

In determining whether the action of a defendant is an attempt, the totality of the facts and circumstances presented by each case must be evaluated. *State v. Williams*, 490 So.2d 255, 261 (La.1986). The overt act need not be the ultimate step toward or the last possible act in the consummation of the crime attempted. *Id.* It is the intent to commit the crime, not the possibility of success, that determines whether the act or omission constitutes the crime of attempt. *State v. Pappas,* 446 So.2d 523, 524 (La.App. 4th Cir. 1984).

. . . .

[T]he evidence in the present case indicates that Smith attempted to commit an act of oral sex with his son Chad.

5

Both Chad and his older brother Jody testified that after they had gone to bed for the night, defendant entered their bedroom and lay upon Chad's bed. Jody and Chad testified that defendant then told Chad to come over to the bed and to sit on his chest so that defendant could suck Chad's penis. At trial, defendant denied entering the boys' room that night and asking Chad for oral sex. However, defendant testified that when he was confronted by his wife and her parents with allegations that he had attempted to molest Chad, he said, "[I]f I did that, I need psychiatric help." Defendant voluntarily sought psychiatric treatment at a local hospital that night and remained under hospital care for one week following the incident.

. . . . Smith did several acts in his attempt to engage in oral sex with his son. He entered his sons' room. He lay on Chad's bed, and he asked Chad to engage in oral sex with him. The nature of the act requested by defendant required compliance by his son, not action by defendant. Furthermore, in *Baxley*, the illegal solicitation took place on a public street between two adult strangers. An adult on a public street can reject unwanted sexual suggestions from strangers by ignoring the remarks and walking away. In the present case, the encounter occurred between father and son in the child's bedroom where the child was subject to the authority of his father and not free to leave.

Clearly, Smith had specific intent to commit a crime against nature with his son that night. He entered his sons' room with the specific intent of engaging in oral sex and for no other reason. He lay down on Chad's bed for that purpose, and he left the room after his son refused to submit to his demand. The fact that his intended victim did not comply with his demand does not negate the fact that the defendant attempted to commit a crime against nature with his son and took distinct steps toward accomplishing his object. Defendant's acts of entering the room, lying on the bed and requesting his son to sit on his chest tended directly toward the commission of an aggravated crime against nature and were more than mere preparation.

*Id.* at 444-45.

In the current case, Defendant was talking to a friend in the friend's bedroom. He was already in the house when the victim came to visit his girlfriend. The victim walked into the bedroom, according to his own testimony, to ask for a ride to the store. There was testimony the door was open and remained open throughout

the incident, and there were other people in the house at the time. In our view, there was nothing to establish that Defendant had the specific intent to engage in oral sex with the victim. Nothing indicated Defendant took distinct steps toward accomplishing the objective of engaging in sexual activity with the victim. There was testimony the victim was in and out of the room a few times. There was no testimony there was any sexual display, or touching, or any occurrence which would have been an act in furtherance thereof.

Furthermore, the State failed to prove a "lewd and lascivious" act upon the victim. In *Robinson*, 975 So.2d at 857, the second circuit discussed the definition of "lewd" and "lascivious" as follows:

> The word "lewd" means lustful, indecent and signifies that form of immorality which relates to sexual impurity carried on in a wanton manner and is identified with obscenity and measured by community norms for morality. The word "lascivious" means tending to incite lust, indecent, obscene and tending to deprave the morals in respect to sexual relations. *State v. Holstead,* 354 So.2d 493 (La.1977); *State v. Prejean*, 216 La. 1072, 45 So.2d 627 (1950); *State v. Bugbee,* [34,524 (La.App. 2 Cir. 2/28/01), 781 So.2d 748] *supra*. Finding that an act is lewd or lascivious depends upon the time, the place and all of the circumstances surrounding its commission, including the actual or implied intention of the actor. *State v. Bugbee, supra*; *State v. Sturdivant,* 27,680 (La.App. 2d Cir. 2/28/96), 669 So.2d 654.

*Robinson* found that the circumstances surrounding the defendant's actions established the lewd and lascivious nature of his act. Robinson entered a store and grabbed the buttocks of a young girl and then attempted to rub up under her shirt. He said to her, "Hey, baby." After the girl fled, he approached another woman and grabbed her bottom also. The defendant argued that his act of grabbing the minor on the buttocks was not a lewd or lascivious act as proscribed by La.R.S. 14:81. The second circuit found otherwise, stating:

7

In this case, the defendant grabbed the stranger's buttocks for a few moments before the child was able to react and pull away. The defendant "tried to go up [the victim's] shirt," but the victim ran away. He engaged in similar groping behavior with another victim. During the physical contact, the defendant said "Hey, baby" to the victim. Robinson later admitted that he acted because he believed the women to be attractive females and he could not help himself. The term "hey bab[e]" and Robinson's statement that he was not able to help himself sufficiently disclose his sexual intentions toward the victim. When viewed in context with the acts which accompanied Robinson's words, including the groping of the child's buttocks and an attempt to reach under her shirt, his behavior was indecent, violated community norms for morality and was indicative of Robinson's lustful disposition toward the child. Thus, when viewed in the light most favorable to the state, a rational fact finder could have concluded that forty-year-old Robinson was guilty of indecent and lewd acts upon this fourteen-year-old with the intent of arousing or gratifying his sexual desires.

*Id.* at 857-58.

In *State v. Rideaux,* 05-446, pp. 12-14 (La.App. 3 Cir. 11/2/05), 916 So.2d 488, 496-97, while discussing the terms "lewd" and "lascivious" this court discussed a case wherein an elderly defendant french kissed two nine-year-old girls:

In *State v. Louviere*, 602 So.2d 1042, 1044 (La.App. 4 Cir. 1992), *writ denied,* 610 So.2d 796 (La.1993) (citations omitted), wherein the defendant was convicted of two counts of indecent behavior with a juvenile, the fourth circuit stated:

To determine whether the trier of fact rationally concluded that this act was "lewd or lascivious," or an act tending directly toward a lewd or lascivious act, we must first consider how these terms are defined. According to a recent decision of this court,

[a] lewd or lascivious act is one which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in a wanton manner.

8

In that case, two nine-year-old girls testified that the seventy-two-year-old defendant asked them to kiss him to see if his breath smelled like chicken and that he attempted to put his tongue in their mouths when they did so. There were no other touches or suggestions of a sexual nature. Our colleagues on the fourth circuit held that without more, although disgusting, there was no evidence that he committed a lewd and lascivious act with the intent to arouse or gratify sexual desires.

The court cited *State v. Saibold,* 213 La. 415, 34 So.2d 909 (1948), in stating:

> [T]he Louisiana Supreme Court, in concluding that the meaning of the terms was sufficiently clear when used together, stated that lewd or lascivious behavior "connotes actions or gestures of the lustful and lecherous nature." Furthermore, "to settle any possible doubt," that court directed attention to the Reporter's Comment to § 14:81, which specifies that the purpose of this section prohibiting indecent behavior with a juvenile is to prohibit behavior that falls short of sexual intercourse carried on with young children as well as indecent sexual displays in their presence.

*Louviere*, 602 So.2d at 1044.

In *State v. Gaspard,* 02-1040, pp. 5-6 (La.App. 3 Cir. 3/5/03), 841 So.2d 1021, 1025, wherein the defendant was convicted of indecent behavior with a juvenile, we quoted *Louviere,* 602 So.2d at 1044-45, as follows:

> In addition, a review of reported cases of prosecutions under § 14:81 is illustrative of the type of conduct intended to be proscribed. Indecent behavior with a juvenile in which kissing has occurred has uniformly involved more. In *State v. Boutte,* 384 So.2d 773 (La.1980), the defendant was alleged to have stuck his tongue into the mouth of a four (4) year old neighbor. In addition, however, he removed the child's clothing, laid on top of her, and rubbed her genitals. While the defendant in *State v. Jacob,* 461 So.2d 633 (La.App. 1st Cir. 1984), did repeatedly kiss a thirteen (13) year old boy, he also pulled the boy on top of him in bed and fondled him

during an overnight stay. And, this court found indecent behavior with a juvenile to have occurred when the defendant french kissed two young boys and also indulged in inappropriate body contact, all over a protracted period. *State v. Rollins*, 581 So.2d 379 (La.App. 4th Cir. 1991). It appears then that a kiss is proscribed behavior under § 14:81 when it is repeated or accompanied by other acts that seem more likely to excite lust and to deprave morals, generally genital contact.

In view of the definition, the stated purpose of the criminal statute, and our review of prior jurisprudence involving the statute, it would be difficult for the rational trier of fact to conclude that the testimony concerning a "bad kiss" proved the occurrence of a lewd and lascivious act. Furthermore, there was no indication that any other action was planned which, together with the kiss, would bring Louviere's conduct within the ambit of the statutory prohibition. Without genital contact or any other obscene or indecent act or repeated occurrence, these kisses fall short of the statutory and judicial requirements of the crime.

In the current case, the circumstances surrounding the comment Defendant made to the victim did not point to a lewd and lascivious act. There was no testimony that Defendant had had any other interactions with the victim outside the house. The victim testified he had seen Defendant at his girlfriend's house on other occasions, but there was never any interaction between the two. At the time the remark was made to the victim, Defendant was talking with the girlfriend's uncle in his room, the door was open, and the girlfriend and her mother were in the house. There was no indecent exposure, or physical contact of any sort. There was nothing which indicated Defendant actively desired sexual contact with the victim. Defendant's comment was short of the statutory requirements of the offense. Taken in the light most favorable to the State, the evidence was insufficient to sustain the verdict beyond a reasonable doubt.

10

## CONCLUSION

For all of the above reasons, there is merit to Defendant's assignment of error. We, therefore, reverse Defendant's conviction, order a judgment of acquittal be entered, and vacate the sentence.

**CONVICTION REVERSED; JUDGMENT OF ACQUITTAL ENTERED; SENTENCE VACATED.**