JgDOWNING, J.
Defendant, Derrell L. Bates, was charged by bill of information with two counts of simple kidnapping, violations of La. R.S. 14:45. The victim of count I was identified as “B. Haynes.” The victim of count II was identified as “R. [H.]”[1] Defendant pled not guilty on both counts. At trial, the State and the defense stipulated that only count II would be submitted to the jury for a verdict, and the State made a notation on the bill of information that count I was dismissed. Following a jury trial on count II, Defendant was found guilty as charged. (Minutes showing verdict returned on “Count I” conflict with the verdict sheet contained in exhibit envelope and record stipulations, but the return of the verdict was not transcribed.) On count II, Defendant was sentenced to three years at hard labor. He now appeals, designating one counseled assignment of error and five arguments in a pro se brief. We reverse the conviction and sentence on count II and order Defendant discharged.
FACTS
Defendant and Barbara Haynes were involved in a relationship. On August 26, 2002, a child (the victim) was born of that relationship.
Robert London, Ms. Haynes’s stepfather, gave the following account of the incident forming the basis for the charges.
On Monday, November 11, 2002, London was asleep and was awoken by the defendant, Ms. Haynes, and the victim falling onto his bed. London told Defendant to release Ms. Haynes and the victim, but Defendant backed out to his truck with Ms. Haynes and the victim and drove away. Ms. Haynes pleaded with Defendant to release her, but Defendant did not let go of either her or the victim. London reported the incident to the police.
| ¡¡Ms. Haynes also testified at trial. She identified Defendant as the victim’s father. The child was her youngest child. She indicated she met Defendant in 2000 and they began living together at his house approximately a year later. Approximately one week before the incident, at Defendant’s request, she and her five children moved out of Defendant’s house. She gave the following account of the incident.
*419 On November 11, 2002, Ms. Haynes and her children, including the victim, were living in her mother’s and stepfather’s home. While Ms. Haynes was holding the victim, she heard the screen door open and saw Defendant. Still holding the victim, Ms. Haynes ran to wake up her stepfather (London). London ordered Defendant to get out of the house. Defendant grabbed Ms. Haynes and tried to pull the victim away from her. He dragged Ms. Haynes, still holding the victim; out of the house by the neck as she screamed for help. He put Ms. Haynes and the victim into his truck and drove them to his home. Defendant told her that she would never see the victim or Ms. Haynes’s other children “no more.” He threatened to kill Ms. Haynes if any of her family members stepped onto his porch. Defendant’s home had one door with a double-keyed dead bolt. Defendant locked himself and both Ms. Haynes and the victim inside the home. He kicked Ms. Haynes in the back, and she fell to the floor. He told her to shut up and cursed her. He told her to take her clothes off, but she refused. He began pulling her clothes off, but was interrupted by the police at the door. When Defendant opened the door for the police, Ms. Haynes escaped from Defendant’s home. She indicated she had not wanted to go to Defendant’s home and had not wanted the victim to go there.
On cross-examination, Ms. Haynes admitted that by order of the family court, Defendant was entitled to unsupervised visitation with the | ¿victim. She conceded she had attempted to have Defendant’s visitation rights with the victim suspended, indicating she did not want Defendant to have unsupervised visitation with the victim.
On redirect examination, Ms. Haynes indicated the actions to restrict Defendant’s unsupervised visitation rights concerning the victim followed her discovery that Defendant was a convicted sex offender.
Christy Tate, Ms. Haynes’s daughter, also testified at trial. Christy stated she was in the fourth grade. She testified that the Defendant took her mother and “the baby” away in a purple and blue truck. He had one arm on her mother’s neck and held the baby with his other arm. Her mother screamed as she was dragged away.
Defendant also testified at trial. He denied kidnapping either Ms. Haynes or the victim. He testified that Ms. Haynes, carrying his child (the victim) in her arms, knocked on his door on the day of the incident. He claimed he let Ms. Haynes and the victim into his house because Ms. Haynes told him she had come to get the remainder of her belongings. He testified that he fed his dog while Ms. Haynes collected her belongings. He claimed, thereafter, the police arrived, and he greeted them. He testified he was totally surprised by Ms. Haynes’s subsequent kidnapping allegation. He claimed his truck was inoperable on the day of the incident.
Defendant also explained he had been granted unsupervised visitation with the victim by the family court. He testified his visitation days were Tuesday, Thursday, Saturday, and Sunday, except the last weekend of the month.
SUFFICIENCY OF THE EVIDENCE
In counseled assignment of error number 1, Defendant contends the verdict was against the weight of the evidence because the record clearly Ushowed that Defendant and Barbara Haynes were engaged in a tumultuous relationship in which Defendant evicted Haynes from his house. He further contends that Haynes was pursuing the kidnapping charge against Defendant to embarrass and humiliate him for *420 evicting her and her children from his home.
In his pro se brief, Defendant contends: (1)the bill of information was so defective as to violate his substantial rights under the federal and state constitutions to be informed of the nature and cause of the charges against him under La. Const, art. 1, § 13, and as to deprive the trial court of jurisdiction, citing State v. James, 517 So.2d 291 (La.App. 1 Cir.1987); (2) he was denied his right to preliminary examination; (3) there was an invalid amendment of the information; (4) in the absence of a suit for divorce or separation, or order awarding custody to the mother, he could not be charged with the simple kidnapping of his son, citing State v. Elliott, 171 La.306, 131 So. 28 (1930); and (5) Ms. Haynes, her stepfather, and her daughter committed perjury by making false statements concerning him and the incident. For the following reasons, we find the evidence insufficient to support the conviction.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La.Code Crim. P. art. 821 B; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
|fiIn its briefs to this Court, the State argues the evidence was sufficient under La. R.S. 14:45 A(l) because the provision does not provide for any exeeption in the case of the kidnapper’s biological child.
Louisiana Revised Statutes 14:45, in pertinent part, provides:
A. Simple kidnapping is:
(l)The intentional and forcible seizing and carrying of any person from one place to another without his consent.
An essential element of the above provision is that the forcible seizing and carrying of the victim be without his consent. And every element of a crime must be proven beyond reasonable doubt before a conviction can be upheld. See State v. Bedford, 01-2298, p. 3 (La.1/28/03), 838 So.2d 758, 760. Because the victim was an infant, however, he could neither grant nor deny consent to his being seized and carried. That consent had to come from or be denied by a legal custodian. See Chatwin v. United States, 326 U.S. 455, 460, 66 S.Ct. 233, 235, 90 L.Ed. 198 (1946). See also 1 Am.Jur.2d Abduction and Kidnapping § 26 (1994) and 51 C.J.S. Kidnapping § 19 (2003). The State here has failed to prove that Defendant was not the joint or sole legal custodian[2] of the victim who possessed the right to consent for the victim.
It is undisputed in this case that the victim was an infant, that Ms. Haynes and Defendant were not married, and that Defendant was the biological father of the victim. It is further undisputed that Defendant had a relationship with his child (the victim) that was recognized and protected by court order, that the victim had lived with defendant for nearly a year, and 17that the court order allows defendant fre *421 quent, unsupervised contact with his child each week.
“The United States Supreme Court has declared it ‘plain beyond the need for multiple citation’ that a biological parent’s right to ‘the companionship, care, custody, and management’ of his children is a liberty interest far more important than any property right.” (Citation omitted.) In re Adoption of B.G.S., 556 So.2d 545, 549 (La.1990). Parents have a fundamental right “to make decisions concerning the care, custody, and control of their children.” Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). This right “is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court.” Troxel, 530 U.S. at 65, 120 S.Ct. at 2060. Further, where an unwed father grasps the opportunity to develop a relationship with his offspring, “and accepts some measure of responsibility for the child’s future, he may enjoy the blessings of the parent-child relationship^]” B.G.S., 556 So.2d at 550. Here, it is undisputed that defendant has accepted his role as father, has demonstrated his commitment to the child, and has a parent-child relationship recognized by judgment, although there is no copy of the judgment in the record for us to review to determine the extent of that recognition. Accordingly, Defendant possesses some degree of parental right to the companionship, care, custody, and management of his child.
For these reasons, we find no merit in the State’s argument that Defendant’s role as a parent is irrelevant to whether he kidnapped his own child. Particularly, the State asserts that La. R.S. 14:45 A(l) does not provide an exception for kidnapping a biological child. This argument, however, fails to recognize that the parent with parental rights charged with | sthe crime may and often will have the authority to provide the consent that would defeat a kidnapping charge under La. R.S. 14:45 A(l).
It is the State’s burden to prove the element of lack of consent to prove kidnapping under La. R.S. 14:45 A(l). See Bedford, supra. Here, the State has failed to prove that defendant, the victim’s father who enjoys established parental rights, lacked the authority to consent to his taking the child. It presented no evidence tending to show that Defendant’s parental rights were limited in any way.
Therefore, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found all the essential elements of La. R.S. 14:45 A(l) beyond a reasonable doubt. Accordingly, Defendant’s argument that the evidence was insufficient has merit. We therefore pretermit discussion of the remaining assignments of error.
DECREE
For the reasons assigned, we reverse the conviction and sentence on Count II and order defendant discharged.
CONVICTION AND SENTENCE ON COUNT II REVERSED; DEFENDANT DISCHARGED.

. Barbara Haynes testified at trial and indicated her infant son’s initials were R.D.L.H. See La. R.S. 46:1844 W.

. Legal custody is generally defined as the right or authority of a parent or parents to make decisions concerning a child’s upbringing. Evans v. Lungrin, 97-0541, 97-0577, p. 11 (La.2/6/98), 708 So.2d 731, 737. "Pursuant to this definition, both parents remain legal custodians of the child regardless of which parent had physical custody of the child at a given time[.]” Id.