# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 24-190

**STATE OF LOUISIANA**

**VERSUS**

**MARCEL N. DUGAR**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2439-21
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**LEDRICKA J. THIERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Gary J. Ortego, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.

**AFFIRMED AS AMENDED.**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P.O. Box 1641**
**Lake Charles, LA 70602**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT**
　　**Marcel N. Dugar**

**Marcel N. Dugar**
**Tensas Parish Detention Center**
**8606 Highway 65**
**Waterproof, LA 71375**
**(318) 749-5810**
**PRO SE DEFENDANT/APPELLANT**
　　**Marcel N. Dugar**

**Steven C. Dwight**
**District Attorney**
**David S. Pipes**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPELLEE**
　　**State of Louisiana**

**THIERRY, Judge.**

Defendant, Marcel N. Dugar, was convicted of unauthorized entry of an inhabited dwelling, in violation of La.R.S. 14:62.3, and simple kidnapping, in violation of La.R.S. 14:45. He was sentenced to six years for the unauthorized entry conviction and ten years for the kidnapping, with the sentences to run concurrently. Defendant appeals both the conviction and sentence. For the reasons that follow, we affirm as amended.

## FACTS AND PROCEDURAL HISTORY

On December 21, 2020, Defendant, took L.M.,[1] the eight-month-old child of Janera Brown, away from Brown's residence without permission. Defendant was neither the father nor the legal guardian of the child.

On January 20, 2021, the State, by bill of information, charged Defendant, Marcel N. Dugar, with home invasion, a violation of La.R.S. 14:62.8, and aggravated kidnapping of a child, a violation of La.R.S. 14:44.2. Defendant, on February 22, 2021, pled not guilty.

On September 21, 2021, a jury unanimously found Defendant guilty of unauthorized entry of an inhabited dwelling, a violation of La.R.S. 14:62.3, and of aggravated kidnapping of a child.

However, on appeal this court found that Defendant had been denied his right to self-representation and reversed Defendant's convictions and sentences. *State v. Dugar*, 22-461 (La.App. 3 Cir. 1/25/23), 354 So.3d 881, *writ denied*, 23-193 (La. 9/6/23), 369 So.3d 1267.

---

[1]Pursuant to La.R.S. 46:1844(W), the victim's initials are used to protect his identity.

On April 5, 2023, the State filed an amended bill of information, again charging Defendant with aggravated kidnapping of a child. In place of home invasion, however, Defendant was charged with unauthorized entry of an inhabited dwelling.

Defendant's second trial began on May 1, 2023. Defendant, with the assistance of counsel, represented himself. On May 2, 2023, the jury found him guilty of unauthorized entry of a dwelling and of simple kidnapping. Defendant then filed a motion for new trial which the trial court denied on May 15, 2023.

On June 8, 2023, a habitual offender bill of information charging Defendant as a second or subsequent offender was filed. The trial court did not specifically find Defendant a habitual offender, but he was sentenced pursuant to La.R.S. 15:529.1.

On July 5, 2023, the trial court sentenced Defendant to six years for unauthorized entry of an inhabited dwelling and ten years for simple kidnapping. These sentences were imposed to run concurrently with each other but consecutively to Defendant's parole. The trial court denied Defendant's motion to reconsider sentence on July 28, 2023.

Defendant filed the instant appeal on April 16, 2024. There are two appellant briefs on record. The first was filed by the Louisiana Appellate Project; the second was filed by the Defendant in a pro se capacity. Together, Defendant asserts five assignments of error.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we find an

2

error patent concerning Defendant's habitual offender sentences and an error patent concerning the advice for filing an application for post-conviction relief.

First, La.R.S. 15:529.1(G) required Defendant's habitual offender sentences to be imposed at hard labor. Although the court minutes indicate the sentences were imposed to be served in the Louisiana Department of Corrections, the transcript does not so indicate. Thus, the sentences are illegally lenient. *See State v. Perkins*, 13-245 (La.App. 3 Cir. 11/6/13), 124 So.3d 605. Although the authority to correct an illegally lenient sentence is granted and discretionary under La.Code Crim.P. art. 882, the State contends that resentencing is required due to the trial court's failure to specify whether Defendant's sentences were to be served with or without hard labor. Accordingly, although we find the State's claim that the trial court erred in failing to specify with or without hard labor has no merit, we submit, pursuant to La.Code Crim.P. art. 882, the sentences should be amended to reflect they are to be served at hard labor. *See State v. Matthew*, 07-1326 (La.App. 3 Cir. 5/28/08), 983 So.2d 994, *writ denied*, 08-1664 (La. 4/24/09), 7 So.3d 1193.

Next, the record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief at sentencing as required by La.Code Crim.P. art. 930.8. Thus, we find that the trial court should inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. *See State v. Viltz*, 18-184, p. 12 (La.App. 3 Cir. 11/28/18), 261 So.3d 847; *see also State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

**ASSIGNMENTS OF ERROR**

Defendant alleges five assignments of error on appeal. The first is set forth by his counsel and the remaining four are alleged by Defendant in a pro se capacity.

ASSIGNMENT OF ERROR:

1. When viewed in the light most favorable to the prosecution, the evidence introduced at trial was insufficient to convict Marcel Dugar of simple kidnapping beyond a reasonable doubt.

PRO SE ASSIGNMENTS OF ERROR:

1. Whether there was sufficient evidence to find Defendant guilty of simple kidnapping beyond a reasonable doubt.

2. Whether simple kidnapping is a responsive verdict to the charge of aggravated kidnapping.

3. Whether Defendant should have been permitted to present a 'justification' defense in his closing argument.

4. Whether Defendant's sentence is unconstitutionally excessive.

**ASSIGNMENT OF ERROR AND PRO SE ASSIGNMENT OF ERROR NO. 1:**

*Whether There Was Sufficient Evidence for the Jury to Find Defendant Guilty of Simple Kidnapping Beyond a Reasonable Doubt*

In his first assignment of error, Defendant contends the jury did not have sufficient evidence to find he had the specific intent to take Janera Brown's child "for an unlawful purpose."

*Relevant Law*

The analysis for insufficient-evidence claims is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307,

99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

This court has stated the following regarding appellate review in cases relying on circumstantial evidence:

When the conviction is based upon circumstantial evidence, La.R.S. 15:438 provides that the state "must exclude every reasonable hypothesis of innocence" in order to convict. *State v. Camp*, 446 So.2d 1207, 1209 (La.1984). "Circumstantial evidence consists of proof of collateral facts and circumstances from which elemental factors may be inferred according to reason, experience and common sense." *State v. Burns*, 441 So.2d 843, 845 (La.App. 3 Cir.1983). However, La.R.S. 15:438 does not establish a stricter standard of review on appeal than the rational juror's reasonable doubt standard. The statute serves as a guide for the jury when considering circumstantial evidence. On appeal, the issue is whether a rational trier of fact, when viewing the evidence in a light most favorable to the prosecution, could find that all reasonable hypotheses of innocence were excluded. *State v. Williams*, 13-497 (La.App. 3 Cir. 11/6/13), 124 So.3d 1236, *writ denied*, 13-2774 (La. 5/16/14), 139 So.3d 1024.

*State v. Baumberger*, 15-1056, pp. 10−11 (La.App. 3 Cir. 6/1/16), 200 So.3d 817, 826−27, *writ denied*, 16-1251 (La. 5/26/17), 221 So.3d 859, *cert. denied*, 583 U.S. 950, 138 S.Ct. 392 (2017).

Simple kidnapping is defined in La.R.S. 14:45, which provides in pertinent part:

A. A simple kidnapping is:

. . . .

(2) The intentional taking, enticing or decoying away, for an unlawful purpose, of any child not his own and under the age of fourteen years, without the consent of its parent or the person charged with its custody.

Regarding the burden of proof in a case of simple kidnapping, the second circuit in *State v. Belcher*, 34,616, p. 7 (La.App. 2 Cir. 6/20/01), 793 So.2d 262, 267, noted:

The Legislature, in proscribing "taking, enticing or decoying away" of children, obviously did not intend to include in the proscription actions undertaken for a lawful purpose (such as, for example, giving children a ride to school on a rainy day), even when done without the consent of the parents. However, the State, in order to satisfy its burden of proof by sufficient evidence, need not establish the exact nature of defendant's intent or purpose, but rather need only negate the existence of any lawful purpose. *State v. Gill,* 441 So.2d 1204 (La.1983).

In *State v. Shaikh*, 15-687 (La.App. 3 Cir. 3/23/16), 188 So.3d 409, *writ denied*, 16-756 (La. 4/24/17), 220 So.3d 740, *rev'd in part on other grounds*, 16-750 (La. 10/18/17), 236 So.3d 1206, this court analyzed the decision in *Belcher* and noted the State can prove the existence of an unlawful purpose in a kidnapping simply by virtue of a victim's age and being taken without the consent of their legal custodian.

### *The Evidence Presented at Trial*

The following is a summary of the evidence the jury used to find Defendant guilty.

The incident occurred on December 21, 2020. L.M. was eight months old, and he was the son of Janera Brown and Aaron McGee.

In July of 2020, Janera Brown and Defendant were in a relationship. Defendant lived in Brown's apartment along with her two children, L.M. and

6

Alaya. Brown testified that Defendant would get agitated when the children's father wanted to spend time with them.

Cynthia Calvin, Janera Brown's grandmother, testified that on November 29, 2020, she, her husband, and her son moved in with Brown and Defendant since their home had been destroyed by Hurricane Laura. She testified that after an incident between Defendant and Alaya's father, Defendant was told to move out of the apartment.

According to Brown, Defendant was told to leave the apartment in the beginning of December 2020. She testified Defendant paid neither rent nor bills, nor was he listed on the lease of the apartment. Still, Defendant would occasionally visit the residence in December, although he did not have a key.

Brown and her grandmother testified that while Defendant stayed at Brown's apartment, he would often threaten violence. "Basically," testified Brown, "if I wanted him to leave, I would have to pay him $2,000 or he would hurt me or my kids, just stuff of that nature." Brown also testified to an incident of actual violence:

> So in December, I want to say it was like maybe a day or two before the incident happened, I was sitting in [Defendant's] car, and we went to the car wash, and I remember us talking about my child's father, which is Alaya Jefferson and [L.M.'s] dad. [L.M.'s] dad had wanted to buy them some stuff for Christmas and so [L.M.'s] dad wanted to come pick them up and it really agitated him that my kids' fathers are involved in their life.
>
> And I remember we were sitting in the parking lot just parked at the car wash, and he grabs me by my head and just starts like punching me in my head at the car wash. And I was crying, and then we ended up leaving driving [sic] back to my house, and he done [sic] it all over again. And my baby was in my hands and he was punching me so hard to where [L.M.] dropped out of my hands three -- two or three times because of how hard he was punching me.

7

On the morning of the incident, Defendant, who had stayed at the residence the night before, left angrily after an argument with Brown. The argument again concerned the children's father wanting to spend Christmas with them. That morning, Brown told Defendant not to come back to the house. Defendant left, but later Brown received a text message from Defendant shortly before he returned to her apartment. Brown testified that the message in effect said, "Bitch, I'm on my way and you better be ready" or "Bitch, I'm on the way. You better be ready when I get there." When the State asked whether Defendant's agitation stemmed from her children's father wanting to spend time with them, Brown said yes and that he had made a very big deal about it. Once Defendant arrived at her apartment, Brown placed L.M. at the feet of her grandmother, Cynthia, and fled to a neighbor's house. She then called the police.

Cynthia testified that once Defendant arrived and knocked on the front door, she told him he was not welcome and that he was not going to be let in. The knocking turned to banging. The banging turned to kicking. By then, Cynthia called the police. Defendant went to the back door and tried to kick in the door. After failing, he went to the kitchen window, broke it, and climbed through, knocking down blinds, curtains, rods, and two televisions.

Cynthia testified that Defendant went down the hall looking for Brown. He went into her bedroom and opened her closet. As he made his way into the living room, Cynthia picked L.M. up off the floor. "When I picked [L.M.] up," said Cynthia, "[Defendant] didn't say a word to me. He didn't say nothing. [sic] He just looked like he wanted to hurt somebody[.]" Defendant took L.M. and left Cynthia alone in the apartment. He also left L.M.'s car seat and diaper bag.

8

Janera Brown did not return to her apartment until the police arrived. Sergeant Kevin Fontenot of the Calcasieu Parish Sheriff's Office testified that Brown was distraught, shocked, and scared upon learning that her son had been taken.

While with the police, Brown received a text message from Defendant. It was a photo of L.M. "with some paper in his mouth." She gave her phone to the deputies. The metadata from the photograph was entered into evidence. That data showed the photo was taken in North Lake Charles and not at Brown's apartment. Also, the photo was not taken immediately after Defendant had taken L.M. At approximately 11:25 a.m., authorities received the 911 call concerning Defendant's break-in. The photo was taken at 11:39 a.m.

Detective Lieutenant Casey Lafargue, the supervising detective responding to the kidnapping, recovered video surveillance from a neighbor's residence. The video was presented to the jury. The video showed Defendant throwing his weight against the door of Brown's apartment and later fleeing in a vehicle.

Defendant was later found on Clover Street in Lake Charles by Sergent Joe Duhon. Defendant was apprehended and the child recovered.

Detective Lafargue testified that as part of the investigation he took a statement from Defendant which was recorded and admitted into evidence. Lafargue testified that despite telling the police that the baby was choking and that he was taking the child to Walmart for a toy, Defendant passed multiple Walmart stores and health care facilities without stopping at any of them. Instead, he brought L.M. straight to his house on Clover. Brown testified she had never been to Defendant's place on Clover, nor had she ever allowed Defendant to take L.M. to that location.

Additional evidence introduced at trial included photographs of Brown's apartment taken on the night of the incident and photographs of Defendant's car. These photos were identified during trial by two deputies. The photos of the apartment showed the damaged window, blinds, and television, as well as indentations to the doors. The photos of the car showed a paper receipt.

There was also the testimony of the witnesses Defendant himself presented. Bridgett Spencer testified that she was in the car when Defendant entered the apartment and took L.M., saying that when Defendant returned with the baby, she saw paper in the baby's mouth and brought that to Defendant's attention. She testified Defendant immediately took a picture of the baby in the parking lot of Brown's apartment. However, on cross examination, after being told of the metadata showing the photo was taken in North Lake Charles, Spencer said she did not remember where the photo was taken.

Defendant's friend Devonte George also testified. His testimony confirmed Defendant entered the apartment through the window and left with the baby. Like Spencer, he testified the baby was choking and that the photograph of the baby was taken in the parking lot of Brown's apartment, again contradicting the metadata showing otherwise. Also, on cross-examination, it was made clear that though George testified he was with Defendant all day beginning at seven o'clock in the morning, his Facebook message history showed that at 10:40 in the morning he was still not with Defendant. Again, the break in occurred at approximately 11:25 a.m.

### Defendant's Argument

Defendant does not dispute Janera Brown's infant was under the age of fourteen, nor does he dispute he lacked consent to take her child. He concedes that

10

L.M. was without the capacity to consent to being taken to another location, and he acknowledges he was not L.M.'s biological father.

Nevertheless, Defendant notes he and Brown had been in a relationship and lived together for some time. As they lived together, he was allowed frequent contact with L.M. and Brown's other children, and this contact was occasionally unsupervised. He was repeatedly involved in their care. For example, Defendant notes that on the day of the incident, he was part of a three-way discussion between himself, Brown, and the father of Brown's daughter, Alaya. This discussion concerned the arrangements for how Alaya was to be picked up by her father. Additionally, he notes Janera Brown herself said that L.M. looked up to Defendant as a father figure.

From this, Defendant contends he was accustomed to taking care of the child and that "by custom and practice of the family, [he] did in fact possess some degree of companionship, care, custody, and management of [L.M.]" In fact, Defendant claims he was the "joint or sole legal custodian of L.M. who possessed the right to consent for the victim" and that the State failed to prove otherwise. However, as noted above, Defendant concedes he was not the biological father of L.M., and he provides no evidence that he was ever appointed as the child's legal guardian, nor is there anything in the record which proves so. Consequently, when Defendant consented on behalf of L.M. by taking him to another location, it was within his authority. Not only that, Defendant claims he did not take L.M. on a whim, but rather was forced to. The circumstances of that day required his intervention.

According to Defendant, on December 21, 2020, L.M. was choking on a piece of paper. Defendant contends, therefore, that when he took the child, he did

11

not do it for an "unlawful purpose," but to save the child's life. Furthermore, he notes he informed Brown that this was the reason he was taking her child, and once the child was apparently safe, he told her he was taking the baby to Walmart to buy a toy. In short, he kept her constantly informed.

Given the alleged emergency and the relationship he had with Brown, Defendant concludes his purpose for taking L.M. was the opposite of "unlawful." Defendant says he "removed the child from the home in plain view of [Brown's] grandmother as the child was choking and sent a text message to [Brown] stating that he was taking the child to get a toy and that he would soon return. He should be seen as a Good Samaritan and not a kidnapper."

*The Evidence Was Sufficient*

Given the evidence noted above, the State gave the jury sufficient evidence to find Defendant guilty of simple kidnapping beyond a reasonable doubt, even when considering the testimony of the defense's witnesses. Witnesses, video, photographs, phone data, and even Defendant's own admission, demonstrated Defendant broke into Brown's residence and took her child. Moreover, regarding whether L.M. was choking to death, the jury had sufficient evidence to discern the truth of the matter. Accordingly, we find this assignment to be without merit.

**PRO SE ASSIGNMENT OF ERROR NO. 2:**

*Whether Simple Kidnapping Is a Responsive Verdict to the Charge of Aggravated Kidnapping*

Defendant asserts simple kidnapping is not a responsive verdict to the charge of aggravated kidnapping of a child since all the essential elements of the lesser offense are not also essential elements to the greater offense charged. Although Defendant claims he objected to the jury instruction to consider the offense of

12

simple kidnapping as a lesser included offense, he gives no record citation, and we did not find Defendant's alleged objection in the transcript. Therefore, per La.Code Crim.P. art. 841, this issue was waived.

**PRO SE ASSIGNMENT OF ERROR NO. 3:**

*Whether Defendant Should Have Been Permitted to Present a 'Justification' Defense in His Closing Argument*

Defendant contends he was denied due process and a fair trial when the trial court decided he would not be allowed to present in his closing argument a justification defense pursuant to La.R.S. 14:18(3).[2] In his brief, he says, "Though the current circumstances was [sic] a criminal matter and not a civil litigation . . . Appellant only intended to persuade the jury that Louisiana law did recognize and authorize his conduct on the day of the incident."

Specifically, Defendant sought to justify his taking of L.M. by claiming his actions were authorized by La.R.S. 9:2793, a provision in the civil code ancillaries regarding the limitation of liability when performing gratuitous services at the scene of an emergency. In his brief, Defendant claims he also wished to reference La.R.S. 14:502, which regards failure to seek assistance; however, the transcript shows that Defendant argued only to use the civil code provision just mentioned.

---

[2]Louisiana Revised Statutes 14:18 states:

The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:

. . . .

(3) When for any reason the offender's conduct is authorized by law[.]

13

There is a lack of authority regarding whether a defendant may reference the civil code in his or her closing argument for a criminal trial. Nonetheless, even if one assumes Defendant may have done so, his argument is without merit.

Firstly, the statute has no relevance since it only serves to limit liability for civil damages for those who in good faith render emergency care. Defendant was not facing civil damages but criminal charges. Secondly, the statute does not authorize any conduct. Even if it does by implication, it certainly did not authorize Defendant to take L.M. away from his legal guardian without any permission. Lastly, Defendant's entire defense was an attempt to justify his taking of L.M. Throughout the trial, he tried to persuade the jury that he was forced to rescue the infant from choking. He presented evidence supporting his interpretation of the facts, tried to contradict the evidence showing otherwise, and though the trial court kept him from referencing an irrelevant civil statute in his closing argument, Defendant essentially remained free to justify his taking of an infant. This assignment of error is without merit.

**PRO SE ASSIGNMENT OF ERROR NO. 4:**

*Whether Defendant's Sentence Is Unconstitutionally Excessive*

Defendant contends his ten-year sentence for simple kidnapping is unconstitutionally excessive.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

In this case, Defendant was convicted of simple kidnapping, a violation of La.R.S. 14:45. Pursuant to La.R.S. 14:45(B), "Whoever commits the crime of

simple kidnapping shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than five years, or both."

Additionally, Defendant was charged and sentenced as a habitual offender pursuant to La.R.S. 15:529.1(A)(1):

> If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction.

Accordingly, the sentencing range for simple kidnapping when adjudicated as a second habitual offender is a minimum of 1.6 years and a maximum of 10. Defendant therefore received the maximum sentence.

At the sentencing proceeding, the prosecutor stated the habitual offender bill sought to declare Defendant a second or subsequent offender. However, the trial court failed to specifically state that it adjudicated Defendant as a habitual offender, and it did not specifically state it found Defendant a second level offender. The record also does not show that the trial court, when imposing Defendant's sentence, articulated or considered the guidelines of La.Code Crim.P. art. 894.1.

Nevertheless, even where there has not been full compliance with Article 894.1, if the record clearly shows an adequate factual basis for the sentence imposed, remand may be unnecessary. *State v. Guidry*, 19-790 (La.App. 3 Cir. 10/28/20), 305 So.3d 127, *writ denied*, 21-90 (La. 4/13/21), 313 So.3d 1251. Additionally, La.Code Crim.P. art. 881.4(D) states, "The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." Lastly, as this court stated in *State v. Decuir*, 10-1112 p. 3 (La.App. 3 Cir. 4/6/11), 61 So.3d 782, 785 (quoting *State v. Smith*, 34,325, p. 2 (La.App. 2 Cir. 12/20/00),

16

775 So.2d 640, 642), "The question is whether the record presented is sufficient to demonstrate that the trial court did not abuse its discretion. *State v. Davis*, 448 So.2d 645 (La.1984)." Thus, we will consider the nature of Defendant's crime, his background, and the sentences imposed in similar circumstances.

The facts of the crime have already been detailed above. Defendant broke into a residence and took, without consent, an eight-month-old child who was neither his biologically nor legally. Also, this kidnapping was not Defendant's first offense. He had been previously convicted of armed robbery and first-degree robbery.

Comparing Defendant's sentence to those in similar cases, in *State v. Watkins*, 532 So.2d 1182 (La.App. 1 Cir. 1988), the defendant was found guilty of simple kidnapping, adjudicated as a second habitual offender, and received the maximum penalty of ten years. During the kidnapping, the defendant grabbed the victim, who was his real estate agent, choked her, tied her hands, placed her in her car, and drove her across state lines. The victim only managed to escape because the defendant was forced to stop and buy gas. Previously, the defendant had been convicted of aggravated rape, and, along with the simple kidnapping, he committed forgery and simple battery.

In *State v. Harper*, 07-299 (La.App. 1 Cir. 9/5/07), 970 So.2d 592, *writ denied*, 07-1921 (La. 2/15/08), 976 So.2d 173, the defendant was a third habitual offender who was convicted of simple kidnapping, and received seven years at hard labor.[3] According to the victim, the defendant was upset because she told him that she did not want to continue their relationship. The court noted:

---

[3]The maximum penalty for a third offender is ten years.

During one of the calls, the defendant told S.M., "Oh, if I catch you I'm going to blues you. Bitch, you better not step outside, whore, I'm going to get you." S.M. explained that by "blues you," the defendant meant he would do anything possible to her. The defendant also sent S.M. a text message that read, "YEA IF THAT'S INCLUDING YOU. BESIDES IF I HAD EVERYTHING I WOULDN'T BE OUT HERE WAITING 4 YOU GOOD OR BAD HOPN IT WORK OUT SO I DON'T HAVE 2 KILL NOBODY AS SWEET AS YOU. LUV ME."

*Id. at* 596. When committing the kidnapping, the defendant held a knife to the victim's throat and threatened to stab her fifteen times. The appellate court upheld the defendant's sentence, noting the trial court's consideration of aggravating factors such as the defendant using a dangerous weapon when committing the offense, the defendant manifesting deliberate cruelty to the victim, and the defendant having two prior felony convictions.

In *State v. Bowman*, 42,533 (La.App. 2 Cir. 9/19/07), 966 So.2d 104, *writ denied*, 08-1648 (La. 4/17/09), 6 So.3d 786, the defendant was charged with aggravated kidnapping but found guilty of the responsive verdict of simple kidnapping. He had persuaded the victim to leave her grandmother's house to allegedly drive him to his grandmother's house. Once they arrived, the defendant ordered the victim to the back yard and demanded sex. He threatened her if she refused and eventually struck her face. He detained the victim, forced her to have sex with him, and then took her money. The defendant was adjudicated as a second felony habitual offender and received a maximum ten-year sentence. The second circuit, when affirming the defendant's sentence, noted his long criminal history dating back to his childhood, including first degree robbery, aggravated assault, and simple battery. It noted his lack of remorse and the considerable violence of the incident.

Considering the cases above, we find that the trial court did not abuse its discretion in imposing the maximum sentence. While the cited sentences involved more violent kidnappings than the present kidnapping, Defendant here took a mother's baby boy after forcefully entering the home. Given he did so after having been imprisoned and paroled for prior felony convictions, his ten-year sentence for the simple kidnapping of an infant boy does not shock our sense of justice and is supported by the record. Accordingly, this assignment of error is without merit.

## DECREE

Defendant's sentences are amended to reflect they are to be served at hard labor. The trial court is ordered to inform the Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof in the record that the Defendant received the notice. As for the merits, we affirm Defendant's convictions and sentences as amended.

**AFFIRMED AS AMENDED.**